508 So.2d 611 (1987)
Carolyn BIRD, Plaintiff-Appellant,
v.
Helen W. DANIELS, et al., Defendants-Appellees.
No. 18717-CA.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1987.
Rehearing Denied July 9, 1987.
*613 Joe D. Guerriero, Monroe, for plaintiff-appellant.
Hayes, Harkey, Smith & Cascio by Thomas M. Hayes, III, Monroe, for defendant-appellant.
Theus, Grisham, Davis & Leigh by Ronald L. Davis, Jr., Monroe, for appellees.
Before HALL, C.J., and MARVIN and LINDSAY, JJ.
HALL, Chief Judge.
Plaintiff, Carolyn Bird, a guest passenger in an automobile owned and driven by James Fortner and insured by Valley Forge Insurance Company, Inc., was injured in a two car collision. The uninsured driver of the other vehicle was Helen Daniels. Plaintiff sued her own UM carrier, Hanover Insurance Company, Inc., Fortner and his insurer, including a claim under the UM coverage of the policy, as well as Daniels. Plaintiff also demanded penalties and attorney's fees against Valley Forge under LSA-R.S. 22:658. Hanover paid its policy limits of $10,000.00 to plaintiff and sought subrogation against Fortner, Valley Forge, and Daniels.
Daniels did not contest the suit. Fortner and Valley Forge answered and denied any negligence by Fortner and, alternatively, asserted contributory negligence and assumption of risk by plaintiff. Valley Forge further asserted that Fortner's UM coverage was limited to $10,000.00. Shortly before trial, Valley Forge paid its alleged UM policy limits to the plaintiff.
After a trial on the merits, the district court found the accident was caused solely by the negligence of Daniels who failed to yield to a stop sign governing her direction of travel. The court concluded that Fortner, who had the right of way, could not have avoided the accident. Additionally, the court held that Fortner's UM coverage was limited to $10,000.00. The court rendered judgment in favor of plaintiff and against Daniels in the amount of $166,234.82 and recognized Hanover's subrogation rights to the amount it had paid plaintiff under its UM coverage provision. Judgment was also rendered dismissing plaintiff's demands against Valley Forge. The court did not address the issue of penalties and attorney's fees.
Plaintiff and Hanover appealed, specifying three assignments of error:
1) The trial court erred in holding that Fortner was not negligent.
2) The trial court erred in holding that Valley Forge's UM coverage was limited to $10,000.00, rather than $300,000.00.
3) The trial court erred in failing to award penalties and attorney's fees as provided by LSA-R.S. 22:658.
For reasons set forth in this opinion, we amend the judgment of the district court to award penalties and attorney's fees and affirm the judgment as amended.
The accident occurred about 10:30 a.m. on July 1, 1983 at the T intersection of La. 135 and La. 137. Fortner was travelling roughly 45-50 mph in a southerly direction on La. 137 when Daniels, who was headed east on La. 135, ran a stop sign in front of his car. Fortner skidded 72 feet, veered slightly to the left, and hit Daniels' car.

NEGLIGENCE OF FORTNER
Plaintiff contends that Fortner was paying more attention to her than the road. She claims Fortner did not react to the hazardous situation until she alerted him of the impending danger. The thrust of plaintiff's contention is that Fortner's inattentiveness prevented him from avoiding the accident. The trial court found otherwise. Fortner testified that he observed the Daniels' vehicle approaching the intersection but believed that it was going to stop. The testimony of both Fortner and plaintiff indicates that Fortner applied his brakes as soon as it became apparent that the approaching vehicle was not going to stop.
Plaintiff claims that she was an innocent party who was injured as a result of a collision between two drivers, and the burden was on each driver to exculpate himself *614 from negligence. Jordan v. Great American Insurance Company, 248 So.2d 363 (La.App. 4th Cir.1971). Assuming that plaintiff was an innocent third party, we conclude that Fortner has successfully borne this burden.
The evidence at trial established that Fortner was travelling at a reasonable rate of speed, that he had the right of way, that Daniels ran a stop sign directly in front of him, and that Fortner took decisive action upon realizing that Daniels had neglected to stop. Under these circumstances, the trial court was not clearly wrong in finding Daniels solely at fault.

UM COVERAGE LIMITS
Plaintiff argues the trial court erred in finding that Fortner executed a valid selection of lower UM limits; therefore, his UM coverage equalled his liability limits of $300,000.00. Alternatively, plaintiff contends Fortner selected lower limits of $25,000.00 rather than $10,000 as found by the trial court.
LSA-R.S. 22:1406D(1)(a) provides:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. (Emphasis added).
Section 1406 mandates the inclusion of UM coverage in any automobile liability policy delivered or issued for delivery in this state. Coverage is required in limits not less than the limits of bodily injury liability provided in the policy unless the insured in writing rejects UM coverage or selects lower limits.
The selection of lower UM limits must be an affirmative act by the insured and in order for the insured to select different limits, a choice of limits must be made available. Aramburo v. Traveler's Insurance Company, 426 So.2d 260 (La.App. 4th Cir.1983), writ denied 433 So.2d 161 (La. 1983), modified 438 So.2d 274 (La.App. 4th Cir.1983), writ denied 443 So.2d 1110 (La. 1983); Duhe v. Maryland Casualty Company, 434 So.2d 1193 (La.App. 1st Cir. 1983).
On July 14, 1981, Fortner signed a personal automobile application form with Valley Forge. In a box entitled "Bodily Injury LiabilityEach Occurrence", "300 CSL" was written. The number 2,000 was written in the "Medical Payments-Each Person" box. Under the "Uninsured Motorists-Each Person" box, there was written the number 10 in black ink, over which was written the number 25 in green ink. The number 25 was marked through and underneath the box in green ink was written the number 10 with a circle around it. Under the "Uninsured Motorists-Each Accident" box, there was written the number 20 in black ink, over which was written the number 50 in green ink. The number 50 was marked through and beneath that box was *615 written the number 20, also in green ink and it was circled.
Fortner, an insurance agent with 35 years experience, testified that when he signed the application form, the numbers 10/20 appeared in the UM coverage section. Fortner also testified that his secretary had filled in the boxes for him before he signed the application. Based upon these facts, the trial court found that Fortner had made a valid selection of UM coverage in the amount of 10/20. The court noted the other amounts on the application did not alter or change Fortner's written selection of 10/20 UM limits because someone other than Fortner had written in those amounts.
Initially, plaintiff argues that the application form itself was insufficient to constitute a selection of lower limits under the statute. We disagree. Under the Coverage Information section of the application, Fortner selected 10/20 UM coverage limits. We believe this written notation, made by an applicant who was an insurance agent fully aware of the different limits available, was an affirmative act by the insured sufficient to constitute selection of UM limits lower than liability coverage pursuant to LSA-R.S. 22:1406 D(1)(a). See Moore v. Young, 490 So.2d 519 (La. App. 4th Cir.1986).
Plaintiff also contends that parol testimony was inadmissible to establish Fortner's intent at the time he applied for insurance. She argues it was error for the court to consider Fortner's testimony as to the condition of the application at the time he signed the document. Plaintiff strenuously urges that absent parol testimony the application was ambiguous, unclear, and inadequate to establish a written selection of lower limits in accordance with the statute.
Plaintiff, however, has neglected to cite any prohibition against the introduction of evidence relating to the circumstances surrounding the rejection or selection or lower UM coverage. In fact, several cases dealing with similar problems have considered other evidence in order to determine whether a valid selection of lower limits was perfected. See Rawson v. Jennings, 487 So.2d 777 (La.App. 3rd Cir.1986); Rainey v. Gerarve, 461 So.2d 464 (La.App. 5th Cir. 1984), writ denied 463 So.2d 601 (La.1985); Moore v. Young, supra; and Cheadle v. Francois, 470 So.2d 255 (La.App. 4th Cir. 1985), (Barry, J., concurring). The evidence establishes that the application was for 10/20 UM limits and that the insured affirmatively selected those lower limits. The district court correctly held that plaintiff's recovery under the Valley Forge policy was limited to $10,000.00.

PENALTIES AND ATTORNEY'S FEES
Plaintiff contends Valley Forge's failure to pay its UM policy limits within sixty days after demand was arbitrary, capricious, and without probable cause, thereby entitling her to 12 percent penalties and reasonable attorney's fees under LSA-R.S. 22:658[1]. We agree.
Section 658 has been held to apply to uninsured or underinsured motorist claims. Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983). A claimant for penalties and attorney's fees under the statute has the burden of proving that the insurer failed to pay the claim within sixty days after receiving "satisfactory proof of loss" of the claim, and that the insurer was arbitrary and capricious in failing to pay. A "satisfactory proof of loss" within the meaning of Section 658 is that which is sufficient to fully apprise the insurer of the insured's claim. Hart v. Allstate Ins. Co., supra; McDill v. Utica Mutual Insurance Company, 475 So.2d 1085 (La.1985).
To establish a "satisfactory proof of loss" on an uninsured motorist claim, the insured must establish that the insurer received sufficient facts which fully apprised the insurer (1) that the owner or operator of the other vehicle involved in the accident was uninsured; (2) that he was at fault; (3) *616 that such fault gave rise to damages; and (4) the extent of damages. Hart v. Allstate Ins. Co., supra.
On February 10, 1984 plaintiff filed suit against Valley Forge seeking to recover under the UM coverage provision of its policy after asserting that Daniels was uninsured at the time of the accident. On April 6, 1984 plaintiff filed a supplemental and amending petition contending that Valley Forge's refusal to pay its UM policy limits of $10,000.00 was arbitrary and capricious. Plaintiff further asserted that all of her pertinent medical information was made available to Valley Forge.
Valley Forge answered plaintiff's original and supplemental petitions on February 19, 1985. The insurance company agreed that its UM coverage limits were $10,000.00. Valley Forge, however, did not tender payment until November 22, 1985, less than one month before trial. At trial, Valley Forge stipulated that Daniels was uninsured and that her medical expenditures totalled $5,637.86. Valley Forge further stipulated to the admissibility of a police report which indicated that Daniels had run a stop sign and was issued a citation for failure to yield. In its brief, Valley Forge concedes that plaintiff's damages exceeded $50,000.00.
Valley Forge never seriously contested whether Daniels was uninsured, whether she was at fault, whether her negligence gave rise to damages, and whether plaintiff sustained injuries in excess of $10,000.00. Thus, it is apparent that Valley Forge had satisfactory proof of loss shortly after suit was filed, if not before.
Valley Forge explained that its failure to tender payment earlier was merely an oversight. Valley Forge points out that it paid legal interest from the date of judicial demand until payment was made. However, neglect and lack of diligence on the part of Valley Forge does not excuse its failure to pay. Carlson v. Safeco Insurance Company, 499 So.2d 664 (La.App. 3rd Cir.1986). Nor does the payment of interest shield Valley Forge from penalties and attorney's fees provided under LSA-R.S. 22:658.
Based upon these circumstances, we conclude Valley Forge's refusal to pay its UM coverage limits of $10,000.00 was without probable cause. Plaintiff is entitled to the statutory penalty of 12 percent of $10,000.00 and reasonable attorney's fees which we fix at $2,500.00.

DECREE
The judgment of the district court is amended to award plaintiff judgment against defendant Valley Forge Insurance Company, Inc. for penalties in the amount of $1,200 and attorney's fees in the amount of $2,500.00, together with legal interest thereon from date of judicial demand until paid. As amended, the judgment of the district court is affirmed.
AMENDED, AND AS AMENDED AFFIRMED.
NOTES
[1] LSA-R.S. 22:658 was amended by Act 132 of 1986 to reduce the penalty from 12 percent to 10 percent, but all the operative facts of this case occurred prior to the effective date of the amendment.